United States District Court
for the
Eastern District of New York

| | |
|---|---|
| FREEDOM MORTGAGE CORPORATION<br><br>          Plaintiff<br><br>          v.<br><br>SUSAN KRAUSE, VALDEMAR BINSFELD<br><br>          Defendant(s) | )<br>)<br>) Civil Action No.  19-cv-7119<br>)<br>)<br>)<br>) **COMPLAINT**<br>)<br>)<br>)<br>)<br>)<br>) |

Plaintiff, by its attorneys Gross Polowy, LLC, for its complaint against the Defendants allege as follows:

## INTRODUCTION

1. This action is brought pursuant to New York Real Property Actions and Proceeding Law (RPAPL) Article 13, to foreclose a Mortgage encumbering 195 WILSON BOULEVARD, ISLIP, NY 11751, together with the land, buildings, and other improvements located on the Property ("Property"). The legal description of the Property is attached as Schedule B.

## PARTIES

2. Plaintiff is incorporated under the laws of the State of New Jersey with its principal place of business at 907 Pleasant Valley Avenue, Suite 3, Mount Laurel, NJ 08054. Plaintiff is the holder of the subject Note and Mortgage with delegated authority to institute this Mortgage foreclosure action by the owner. Attached here as Schedule A is a copy of the original note.

3. Defendant Susan Krause is a citizen of New York because she is domiciled in New York. Susan Krause is the owner of the Property. See Schedule C.

4. Defendant Valdemar Binsfeld is an individual and citizen of Florida and the holder of a lien encumbering the Property which is subject and subordinate to Plaintiff's Mortgage. See Schedule C.

## STATEMENT OF JURISDICTION

5. Federal subject matter jurisdiction exists pursuant to 28 USC §1332 because complete diversity exists among the Plaintiff and the Defendant(s) and the amount in controversy, without interest and costs, exceeds the $75,000.00.

## VENUE

6. Venue is proper pursuant to 28 USC §1391 because the Property is located in this District and a substantial part of the events and omissions giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

7. On or about March 28, 2012, Susan Krause executed and delivered a Note whereby Susan Krause promised to pay the sum of $305,676.00 plus interest on the unpaid amount due.

8. As security for the payment of the Note Susan Krause duly executed and delivered a Mortgage, in the amount of $305,676.00 which was recorded as follows:

Recording Date: April 19, 2012
Book M00022193/Page 986
Office of the Suffolk County Clerk

9. The Mortgage was subsequently assigned to Mortgage Electronic Registration Systems, Inc., as nominee for Freedom Mortgage Corporation.

10. Said Mortgage was subsequently modified by a Loan Modification Agreement executed by Susan Krause on October 25, 2016 and recorded January 5, 2017 in Book M00022775, Page 283 in the Office of the Suffolk County Clerk.

11. The mortgage was subsequently assigned to Freedom Mortgage Corporation by an assignment executed on December 11, 2019 and sent for recording in the Office of the Suffolk County Clerk.

12. Susan Krause failed to make payment in accordance with the terms of the Note and Mortgage by not making the payment that was due on June 1, 2019 and subsequent payments.

13. There is now due and owing on the Note and Mortgage the following amounts:

Principal Balance: $284,842.63
Interest Rate: 3.875%
Date Interest Accrues from: May 1, 2019

Together with late charges, monies advanced for taxes, assessments, insurance, maintenance, and preservation of the Property, and the costs, allowances, expenses of sale, and reasonable attorney's fees for the foreclosure.

14.    In order to protect the value of the Property and its rights in the Property, the Plaintiff may have to pay taxes, assessments, water charges, insurance premiums, and other charges. Plaintiff requests that any amount it pays, together with interest, be included in the total amount due.

15.    Plaintiff has complied with the notice provision of the Mortgage and RPAPL Section 1304 and filed the information required by RPAPL Section 1306. The Mortgage was originated in compliance with all provisions of Section 595-a of the New York Banking Law and any rules or regulations promulgated thereunder, and, if applicable, Sections 6-l or 6-m of the Banking Law.

16.    No action was brought to recover any part of the Mortgage debt or if any such action is pending final judgment for Plaintiff was not rendered and it is the intent of the Plaintiff to discontinue it.

**WHEREFORE, PLAINTIFF DEMANDS**:

a. Judgment accelerating the maturity of the debt and determining the amount due Plaintiff for principal, interest, late charges, taxes, assessments, insurance, maintenance and preservation of the Property and other similar charges, together with costs, allowances, expenses of sale, reasonable attorney's fees, all with interest;
b. A referee be appointed to sell the Property at auction to the highest bidder, in accordance with to RPAPL Article 13;
c. The interest of the defendant(s) and all persons claiming by or through them be foreclosed and their title, right, claim, lien, interest or equity of redemption to the Property be forever extinguished;
d. The Plaintiff be paid out of the sale proceeds the amounts due for principal, interest, late charges, taxes, assessments, insurance, maintenance and preservation of the Property, and other similar charges, together with costs, allowances, expenses of sale, reasonable attorney's fees, all with interest, and that the sale proceeds be distributed in accordance with to RPAPL Article 13;
e. The property be sold in as is condition, subject to the facts an inspection or accurate survey of the Property would disclose, covenants, restrictions, easements and public utility agreements of record, building and zoning ordinances and violations, and the equity of redemption of the United States of America;
f. Plaintiff may purchase the Property at the sale;
g. A receiver be appointed for the Property, if requested by Plaintiff;
h. A deficiency judgment against Susan Krause, to the extent allowable by law, for the amount that remains due after distribution of the sale proceeds, unless the debt was

<p style="padding-left: 60px;">discharged in a bankruptcy or is otherwise uncollectable, be granted if requested by Plaintiff;</p>

i. If the Plaintiff possesses other liens against the Property, they not merge with the Mortgage being foreclosed and that Plaintiff, as a subordinate lien holder, be allowed to share in any surplus proceeds resulting from the sale;

j. That the Court award Plaintiff additional relief that is just, equitable and proper.

Dated: December 16, 2019
      Westbury, New York

By:

*/NJB/*
Nicholas J. Bebirian, Esq.
Attorneys for Plaintiff
900 Merchants Concourse, Suite 201
Westbury, New York 11590-5114
Tel.: (716)204-1700

## **Schedule A**

Attached here as Schedule A is a copy of the original note. If applicable, certain non-public personal information has been redacted from the attached document.

|  |  | LOAN # ▮▮▮▮ |
|---|---|---|
| Multistate | **NOTE** | FHA Case No. ▮▮▮▮ |

| MARCH 28, 2012 | MELVILLE, | NEW YORK |
|---|---|---|
| [Date] | [City] | [State] |

195 WILSON BOULEVARD, ISLIP, NY 11751
[Property Address]

### 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means CONTINENTAL HOME LOANS INC., A NEW YORK CORPORATION.

and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of ****THREE HUNDRED FIVE THOUSAND SIX HUNDRED SEVENTY SIX AND NO/100******************************* Dollars (U.S. $305,676.00     ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of  FOUR                                                                      percent
(   4.000%  ) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the   1ST   day of each month beginning on  MAY 1, 2012.    Any principal and interest remaining on the   1ST   day of  APRIL, 2042     will be due on that date, which is called the "Maturity Date."

(B) Place

Payment shall be made at
175 PINELAWN RD, STE. 400
MELVILLE, NY 11747

or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S.  $1,459.34.   This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.

[Check applicable box]   ☐ Graduated Payment Allonge    ☐ Growing Equity Allonge
                         ☐ Other [specify]

### 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

### 6. BORROWER'S FAILURE TO PAY

(A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of   15    calendar days after the payment is due, Lender may collect a late charge in the amount of  FOUR               percent (   4.000%  ) of the overdue amount of each payment.

(B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

FHA Multistate Fixed Rate Note - 10/95
Online Documents, Inc.                              Page  1  of  2                              P8700NOT 0804

LOAN #:

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____(Seal)
SUSAN KRAUSE

PAY TO THE ORDER OF

WITHOUT RECOURSE

CONTINENTAL HOME LOANS INC.,
A NEW YORK CORPORATION

BY: Geraldine Tortorici
ITS: Vice President

FHA Multistate Fixed Rate Note - 10/95
Online Documents, Inc.                    Page 2 of 2                    P8700NOT 0804

## **Schedule B – Legal Description**

ALL that certain plot, piece or parcel of land, situate, lying and being at Islip Manor, in the Town of Islip, County of Suffolk, and State of New York, known and designated as and by Lot 2531 as shown on a certain Map entitled, "Map of Islip Manor", and duly filed in the Office of the Clerk of the County of Suffolk on April 20, 1923 as Map File No. 635, which said lot is more particularly bounded and described as follows:

BEGINNING at a point on the easterly side of Wilson Boulevard, distant 250.00 feet northerly from the corner formed by the intersection of the easterly side of Wilson Boulevard with the northerly side of Islip Boulevard, said point or place of beginning being also the point of intersection of the southerly line of Lot 2531 with the said easterly side of Wilson Boulevard, as shown on the said map;

RUNNING THENCE along the easterly side of Wilson Boulevard, North 05 degrees 41 minutes West, 50.00 feet to the northerly line of Lot 2531 on said map;

THENCE along the northerly line of Lot 2531 on said map, North 84 degrees 19 minutes East, 315.00 feet, more or less, to the center line of Winganhauppauge Brook;

THENCE southerly along the center line of Winganhauppauge Brook, 52.50 feet, more or less, to the southerly line of Lot 2531 on said map;

THENCE along the southerly line of Lot 2531 on said map, South 84 degrees 19 minutes West, 299.00 feet, more or less, to the easterly side of Wilson Boulevard, at the point or place of BEGINNING.

## **Schedule C - Defendants**

| | |
|---|---|
| Susan Krause | Borrower |
| Valdemar Binsfeld | Holder of a judgment(s) |